IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DANIEL M.,<br><br>      Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civil No. 21-10533 (RMB)<br><br>OPINION |

**APPEARANCES**
Samuel Fishman
11450 Bustleton Avenue
Philadelphia, Pennsylvania 19116

    *On behalf of Plaintiff*

Elizabeth S. Matoni
Social Security Administration
Office of the General Counsel
300 Spring Garden Street, Sixth Floor
Philadelphia, Pennsylvania 19123

    *On behalf of Defendant*

**RENÉE MARIE BUMB, United States District Judge**

    This matter comes before the Court upon an appeal filed by Plaintiff Daniel M. seeking judicial review of the final determination of the Commissioner of the Social Security Administration (the "Commissioner" and the "SSA," respectively), which denied Plaintiff's application for Social Security benefits. For the reasons set

forth herein, the Court will affirm the decision of the Administrative Law Judge ("ALJ").

I.   PROCEDURAL HISTORY

On November 26, 2018, Plaintiff filed an application for Social Security benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of disability beginning June 10, 2018. [R. at 18.] The claims were first denied on May 8, 2019, and again denied upon reconsideration on August 22, 2019. [*Id.*] On September 5, 2019, Plaintiff filed a written request for a hearing before an ALJ. [*Id.*] That hearing took place on July 23, 2020, via telephone. [*Id.*] Plaintiff was represented by Eric A. Shore and Samantha Xander, both attorneys, at the hearing, at which the ALJ also heard testimony from impartial vocational expert Elizabeth Laflamme. [*Id.*]

On September 16, 2020, the ALJ issued a decision denying Plaintiff's claim for benefits. [R. at 18–28.] Plaintiff requested Appeals Council review of that decision on October 18, 2020. [R. at 171–73.] That Request was denied by the Appeals Council on March 8, 2021, rendering the ALJ's decision final. [R. at 1–6.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

II.   STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere

2

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 372 (3d Cir. 2009).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Hess*, 931 F.3d at 208 n.10 (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i–v). The

claimant bears the burden of proof at steps one through four, whereas the Commissioner bears the burden of proof at step five. *Hess*, 931 F.3d at 201. Recently, the Third Circuit described the ALJ's role in the Commissioner's inquiry at each step of the analysis:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*], 631 F.3d [632, 634 (3d Cir. 2010)]. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert."

> *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

## III.  FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff, who was born on January 1, 1961, was 57 years old on the alleged onset date and 59 years old at the time of his administrative hearing on July 23, 2020. [*See* R. at 18, 37.] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022, meaning that he must establish disability on or before that date to be entitled to benefits. [*See* R. at 20.]

### A.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in gainful activity during the relevant period beginning June 10, 2018. [*Id.*]

At step two, the ALJ found that Plaintiff suffered from the following severe impairment: "cerebrovascular accident." [*Id.*] The ALJ also found that Plaintiff suffers from the following non-severe impairment: "neurocognitive disorder." [*Id.* at 20–23.]

At step three, the ALJ then found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526." [R. at 24.]

At step four, the ALJ found that, during the relevant period, Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) with additional limitations. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work at unprotected heights, or around exposed moving mechanical parts. The claimant cannot work with dangerous heavy machinery, or equipment such as that which cuts, tears, crushes, shears, or punctures in its operations. The claimant cannot use sharp-edged tools such as knives, scissors, or saws.

[R. at 24–27.] The ALJ also found that Plaintiff "is capable of performing past relevant work as a Regional Sales Manager[, which] does not require the performance of work-related activities precluded by the claimant's residual functional capacity." [R. at 27.]

As a result of finding that Plaintiff could perform past relevant work, the ALJ did not need to move on to step five and determine whether Plaintiff "can make an adjustment to other work." *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## IV.  DISCUSSION

Plaintiff raises three arguments in support of remanding this case. First, he argues that "the ALJ failed to properly apply the *de minimis* standard for disability, contrary to agency regulations." [Docket No. 12, at 3–8 (cleaned up).] Second, he argues that "the ALJ failed to explain why limitations he found credible at step two of the sequential evaluation process were not accommodated in [Plaintiff's] RFC."

6

[*Id.* at 8–16 (cleaned up).] Third, he argues that "the appointment of Andrew Saul as a single Commissioner of the SSA who was removable only for cause and would serve a longer term than that of the President violated separation of powers," rendering "the decision in this case, by an ALJ and Appeals Council Judges who derived their authority from Mr. Saul, . . . constitutionally defective." [*Id.* at 16–20 (cleaned up).] The Court will address each argument in turn.

### A. *De Minimis* Standard

Plaintiff first argues that the ALJ's determination that Plaintiff's neurocognitive disorder was a non-severe impairment was erroneous. [*Id.* at 4–8.] However, because the ALJ found that Plaintiff's cerebrovascular accident was a severe impairment, Plaintiff's argument actually turns on whether the ALJ considered Plaintiff's non-severe mental impairment in determining his RFC:

> Typically when an ALJ finds that the claimant has at least one severe impairment at step two and continues onto the subsequent steps, omission of another impairment, or the determination that an impairment is not severe, is harmless error.
>
> The error at step two is only harmless, however, where the ALJ has considered the medically determinable impairment in the RFC determination and it would not otherwise affect the outcome of the case. This is because the RFC assessment must take into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that the ALJ has not deemed to be severe at step two.

*Willistine S. v. Comm'r of Soc. Sec.*, No. 20-5501, 2021 U.S. Dist. LEXIS 187404, at *8 (D.N.J. Sept. 29, 2021) (citing, among other sources, 20 C.F.R. § 404.1545(a)(2)).

7

Here, because the ALJ ruled in Plaintiff's favor at step two—that is, by deeming Plaintiff's cerebrovascular accident to be a severe impairment—the ALJ's determination that Plaintiff's neurocognitive disorder was non-severe at step two was harmless error, so long as the ALJ considered Plaintiff's mental limitations in determining his RFC. Plaintiff addresses this issue with his second argument, discussed below.

**B.     Plaintiff's RFC Determination**

Next, Plaintiff argues that the ALJ's RFC determination was erroneous because it did not consider Plaintiff's mild mental limitations caused by his mental impairments. [Docket No. 12, at 8–16.] It is undisputed that the ALJ found that Plaintiff has "mild limitation[s]" in the following functional areas: "understanding, remembering, or applying information"; "interacting with others"; "concentrating, persisting, or maintaining pace"; and "adapting or managing oneself." [R. at 21–22; *see also* Docket No. 12, at 9; Docket No. 13, at 26–28.] The ALJ is required to consider any such limitations—whether they are caused by a severe or a non-severe impairment—in determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(2). Here, the parties also agree that the ALJ did not include any mental limitations in Plaintiff's RFC. [R. at 24–27; *see also* Docket No. 12, at 10; Docket No. 13, at 26.]

The crux of Plaintiff's argument is that, in making its RFC determination, the ALJ failed to adequately assess Plaintiff's "mild mental limitations and how they would impact his ability to perform work." [Docket No. 12, at 11.] Plaintiff particularly takes issue with the apparent disconnect between the ALJ's finding that

8

Plaintiff has mild mental limitations and the ALJ's determination that he could perform "skilled work" without any accommodations for those limitations. [*See id.* at 11–16.] "Skilled work," Plaintiff points out, "requires 'dealing with people, facts, or figures or abstract ideas at a high level of complexity.'" [*Id.* at 12 (quoting 20 C.F.R. § 404.1568(c).] Plaintiff argues that "[t]he ALJ did not even attempt to explain how [Plaintiff] could perform his past relevant skilled work with the mental limitations he found credible," and goes on to list all of the ways in which Plaintiff's past relevant work could conflict with his mild mental impairments. [*See id.* at 13–16.]

The Commissioner argues in response that, in fact, the ALJ **did** consider Plaintiff's mild mental limitations and provided several reasons as to why no mental limitations were included in the RFC assessment. [Docket No. 13, at 26–27.] Specifically, the ALJ wrote:

> [N]o mental limitations have been included in the residual functional capacity because the claimant made a quick recovery from his initial symptoms, and because the record shows only mild impairment. For example, only a few months after the claimant's stroke, the claimant denied depression and memory loss. A mental status examination at Cooper Health Care in November of 2018 showed the claimant was awake and alert, had appropriate affect, normal speech, intact comprehension and expression, normal memory, normal concentration, and normal fund of knowledge. Moreover, although Dr. Radar stated that the claimant's attention, processing speed, and reasoning appeared to be mildly below his baseline, a determination of ability to engage in work activity under Social Security regulations does not require that one return to one's own baseline. Finally, treatment evidence in the record dates only to approximately mid-2019, suggesting resolution of the claimant's conditions.

[R. at 27.]

The Court agrees with the Commissioner's argument on this issue. As the Third Circuit has ruled, an ALJ's RFC determination need not use "any particular language" nor any "incantations . . . simply because a particular finding has been made at steps two and three." *Hess*, 931 F.3d at 209. Rather, the ALJ need simply "offer[] a valid explanation" for not including a limitation based on a "difficult[y]" n a functional domain. *See id.* at 211. Here, the ALJ offered a valid explanation for not including any mental limitations in the RFC—namely, that Plaintiff's impairments were mild and that he had quickly recovered after his stroke. [R. at 27.]

Plaintiff's argument would require an unfairly nitpicky reading of the ALJ's decision—precisely what *Hess* cautioned against. Rather, while it is almost always true that an ALJ could have given a more detailed analysis, here the ALJ plainly satisfied the "substantial evidence" standard. *See Hess*, 931 F.3d at 208 n.10. Therefore, the ALJ did not err in his failure to include mental impairments in Plaintiff's RFC. The Court will not remand on that basis.[1]

### C. Constitutional Argument

Finally, Plaintiff argues that "the appointment of Andrew Saul as a single Commissioner of the SSA who was removable only for cause and would serve a

---

[1] Moreover, even if the ALJ erred in his decision regarding the severity of Plaintiff's mental impairments, such error was harmless because the ALJ did consider Plaintiff's mental impairments in the RFC determination. *See Willistine S.*, 2021 U.S. Dist. LEXIS 187404, at *8.

longer term than that of the President violated separation of powers," rendering "the decision in this case, by an ALJ and Appeals Council Judges who derived their authority from Mr. Saul, . . . constitutionally defective." [*Id.* at 16–20 (cleaned up).] The Commissioner concedes that 42 U.S.C. § 902(a)(3) violates separation of powers "to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." [Docket No. 13, at 10.]

It appears that Plaintiff's Counsel has made this exact argument before, including in *Thaddeus K. v. Kijakazi*, No. 21-8573, 2022 U.S. Dist. LEXIS 116234 (D.N.J. June 30, 2022) (Wolfson, C.J.). As in this case, the plaintiff in *Thaddeus K.* argued that the case should have been remanded "because the statute under which Andrew Saul, the former Commissioner of the SSA, was appointed contained an unconstitutional removal provision" and that, "in light of *Seila Law LLC v. CFPB*, it is, as a matter of separation of powers, unconstitutional for an executive agency led by a single commissioner to only be removable for good cause." *Thaddeus K.*, 2022 U.S. Dist. 116234, at *26. Therefore, the plaintiff argued, "42 U.S.C. § 902(a)(3), the statute pursuant to which Saul was appointed, is unconstitutional, and in turn, the power derived by the ALJ from Saul was invalid." *Id.* (footnote omitted).

Like in this case, the Commissioner in *Thaddeus K.* "agree[d] that the statute is unconstitutional insofar as [it] 'violates the separation of powers [and] to the extent it is construed as limited the President's authority to remove the Commissioner without cause.'" *Id.* at *26–27. "However," Chief Judge Freda L. Wolfson concluded, the Commissioner "correctly[] argue[d] that the unconstitutional removal

11

provisions in 42 U.S.C. § 902(a)(3) does not invalidate the ALJ's decision." *Id.* at *27.

Like in this case, [*see* Docket No. 14, at 5–10], the plaintiff in *Thaddeus K.*— "likely in response to" the Commissioner's discussion of *Collins v. Yellen*, 141 S. Ct. 1761 (2021)—"abandoned his argument that the ALJ's decision caused the denial of benefits"[2] and argued "instead[] that he suffered two injuries related to the Appeals Council which have a sufficient nexus with the unconstitutional removal provision," *Thaddeus K.*, 2022 U.S. Dist. LEXIS 116234, at *27. In both this case, [*see* Docket No. 14, at 5–10], and in *Thaddeus K.*, *see Thaddeus K.*, 2022 U.S. Dist. LEXIS 116234, at *29–30, those arguments were: (1) that the plaintiffs did "not receive[] a 'constitutionally valid adjudication process from the SSA's Appeals Council'" and (2) "that [they] 'did not receive the constitutionally valid determination by the Appeals Council.'"

Chief Judge Wolfson rejected the plaintiff's arguments in *Thaddeus K.* for two reasons, which this Court adopts. First, Chief Judge Wolfson ruled that a district court "does not have the authority to examine the Appeals Council's denial of review," which is what the plaintiff sought in *Thaddeus K.* and what Plaintiff seeks here. *See Thaddeus K.*, 2022 U.S. Dist. LEXIS 116234, at *31. [*See* Docket No. 14, at

---

[2] The Court notes that the language used by the plaintiffs in both cases appears to be identical.

5–10.] The Court explained that "the judicial review provision of the Social Security Act only allows claimants to seek review in a district court upon 'any final decision of the Commissioner of Social Security.'" *Thaddeus K.*, 2022 U.S. Dist. LEXIS 116234, at *30 (quoting 42 U.S.C. § 405(g)). Because "the Appeals Council exercises 'certiorari-type jurisdiction . . . over decisions by administrative law judges,' . . . once 'the Appeals Council denies the request for review, the ALJ's decision'"—and not the Appeals Council's denial—"'is the Commissioner's final decision.'" *Id.* (first quoting *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993); and then quoting *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001)). In fact, the Third Circuit has expressly stated that "[n]o statutory authority . . . authorizes [district courts] to review the Appeals Council decision to deny review." *Matthews*, 239 F.3d at 594. Therefore, the *Thaddeus K.* Court concluded that the plaintiff could not "assert harm by the Appeals Council." *Id.* This Court adopts Chief Judge Wolfson's reasoning and, as a result, also concludes that Plaintiff has not established a valid basis upon which this Court can review the Appeals Council's denial of review in his case.

The second reason that the Court denied the plaintiff's constitutional argument in *Thaddeus K.* was because the plaintiff's "reliance on *Collins*'s remedial analysis [was] misplaced." *Id.* at *31. The Court explained that "[i]n *Collins*, the plaintiffs requested that the Court invalidate a decision by [Federal Housing Finance Agency] Directors to implement a contract amendment. Thus, the *Collins* Court

13

answered the question of what remedy was available for an action by an *agency head* subject to an unconstitutional removal provision." *Id.* However, both here and in *Thaddeus K.*, the plaintiffs made a different request: "that [the] Court invalidate decisions by *inferior officers*, *i.e.*, the ALJ or Appeals Council, [properly] appointed by an agency head." *Id.* (emphasis in original). But this was something that the *Collins* Court never considered. *See id.* "As such," the *Thaddeus K.* Court held, "whether *Collins*'s remedial analysis is applicable here is not readily apparent as suggested by Plaintiff." *Id.*

The *Thaddeus K.* Court went a step further, however, and held that "even if [it] were to apply *Collins*'s remedial analysis," the plaintiff "fail[ed] to argue a valid nexus between the unconstitutional removal restriction and [his] injuries." *Id.* His "focus on the Appeals Council's decision, rather than the ALJ's, has to do with timing. In a clever attempt to comply with the *Collins* Court's examples of what might constitute compensable harm," the plaintiffs in both *Thaddeus K.* and in this case "speculated that President Biden 'would have fired [Commissioner Saul] absent the unconstitutional statutory removal provision in this case.'" *Id.* [*See also* Docket No. 14, at 6.]

Chief Judge Wolfson found this argument lacked a sufficient connection to the ALJ's decision. *Thaddeus K.*, 2022 U.S. Dist. LEXIS 116234, at *32–33. It is true that the plaintiffs in *Thaddeus K.* and here pointed out that President Biden fired Commissioner Saul shortly after *Collins* was decided, at least in part because

14

President Biden felt that Commissioner Saul "undermined and politicized" the SSA. *See id.* (quoting Lisa Rein, *Biden fires head of Social Security Administration, a Trump holdover who drew the ire of Democrats*, WASH. POST (July 11, 2021), available at https://www.washingtonpost.com/politics/andrew-saul-social-security-/2021/07/09/c18a34fa-df99-11eb-a501-0e69b5d012e5_story.html). However, as Chief Judge Wolfson noted, the plaintiff in *Thaddeus K.* "point[ed] to no statements *prior* to the Appeals Council's findings on February 11, 2021"—the date the Appeals Council denied his request for review—"that President Biden expressed any intent to relieve Commissioner Saul of his post." *Id.* at *33 (citing *High v. Kijakazi*, No. 20-3528, 2022 U.S. Dist. LEXIS 22962, at *14 (E.D. Pa. Feb. 9, 2022)). Chief Judge Wolfson explained that

> [b]oth examples cited in *Collins* involve explicit statements, expressed either publicly or in court, that the hypothetical President would likely remove the agency head at issue, but cannot due to statutory restrictions. *Collins*, 141 S. Ct. at 1789. Without such a properly timed statement from President Biden, the Court would be engaging in mere guesswork as to President Biden's frame of mind between January 20, 2021, [when he was inaugurated,] and February 11, 2021. The Court cannot speculate as to what President Biden *may* have done upon taking office to remove Commissioner Saul.

*Id.* The same is true in this case: the Appeals Council denied Plaintiff's request for review on March 8, 2021, and Plaintiff offers no statements or other evidence that President Biden would have fired Commissioner Saul prior to that date, if he had been able to. [*See* Docket No. 14, at 5–10.] Therefore, as in *Thaddeus K.*, Plaintiff "has failed to show a sufficient nexus between the unconstitutional removal

restriction and the ALJ's decision." *Thaddeus K.*, 2022 U.S. Dist. LEXIS 116234, at *33 (citing various cases). As such, Plaintiff's constitutional argument does not provide a basis for remand.

## V.     CONCLUSION

For the reasons expressed above, the Court will affirm the decision of the ALJ. An accompanying Order shall issue.

<u>July 26, 2022</u>                                    <u>s/Renée Marie Bumb</u>
Date                                                         Renée Marie Bumb
                                                                 United States District Judge

16